# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. H. THARP, Minor.

UNPUBLISHED
October 4, 2018

No. 342358
Oakland Circuit Court
Family Division
LC No. 17-855110-NA

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor son, JHT. Although she does not challenge the statutory bases for termination on appeal, respondent's parental rights were terminated pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody and no reasonable expectation that parent will be able to provide proper care and custody within a reasonable time)[1] and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). On appeal, respondent contends that the trial court erroneously concluded that termination was in the best interests of JHT. We affirm.

## I. RELEVANT FACTS

This case arises out of the termination of respondent's parental rights due to allegations and a history of neglect and substance abuse. On July 19, 2017, petitioner, the Michigan Department of Health and Human Services (the DHHS), filed a petition for permanent custody over JHT. The petition alleged that respondent: had a history of involvement with Child Protective Services (CPS), that her parental rights had been terminated to another child; that JHT had originally been removed from respondent's care at birth after testing positive for marijuana

---

[1] MCL 712A.19b(3)(g) has since been amended, effective June 12, 2018. Under the former version of the statute, failure to provide proper care and custody "without regard to intent" is a statutory ground to terminate parental rights. MCL 712A.19b(3)(g). Under the new version of the statute, failure to provide proper care and custody is a ground for termination only where, within the court's discretion, a parent was "financially able to do so." MCL 712A.19b(3)(g) as amended by 2018 PA 58.

and experiencing symptoms of nicotine withdrawal; and after JHT was returned to respondent seven months later, CPS again became involved with respondent when she was found passed out while caring for JHT, thought she had lost him, and subsequently tested positive for cocaine and opiates. The petition alleged that statutory grounds to terminate respondent's parental rights to JHT existed under MCL 712A.19b(3)(g), (i), (j), and (l). Respondent ultimately pleaded no contest to the allegations contained within the petition, conceded the trial court's jurisdiction over JHT, and pleaded to statutory grounds under MCL 712A.19b(3)(g) and (j), in exchange for petitioner withdrawing its allegation that statutory grounds for termination existed under MCL 712A.19b(3)(i) and (l). Following a best interests hearing, the trial court determined that clear and convincing evidence showed termination of respondent's parental rights was in the best interests of JHT. This appeal followed.

## II. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that it was in the best interest of JHT to terminate her parental rights. We disagree.

"The clear error standard controls our review of both the court's decision that a ground for termination has been proven by clear and convincing evidence and . . . the court's decision regarding [a] child's best interest." *In re Medina*, 317 Mich App 219, 226; 894 NW2d 653 (2016) (quotation marks and citations omitted). See also MCR 3.977(K). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). " 'A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made.' " *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016), quoting *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). "In applying the clear error standard in parental termination cases, 'regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.' " *In re Schadler*, 315 Mich App at 408-409, quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Subsequent to finding a statutory ground for termination by clear and convincing evidence, a trial court "cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5) and *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "In making its best-interest determination, the trial court may consider 'the whole record,' including evidence introduced by any party." *In re Medina*, 317 Mich App at 237, citing *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000), superseded by statute on other grounds as stated in *In re Moss*, 301 Mich App 76 (2013). " '[T]he focus at the best-interest stage has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015), quoting *In re Moss*, 301 Mich App at 87 (alteration in original). In order to "adequately safeguard the child's interest in a normal family home," the best-interest determination need only be supported by a preponderance of the evidence. *In re Moss*, 301 Mich App at 89.

"To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent,

the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014), quoting *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "Other considerations include the length of time the child was in care, the likelihood that 'the child could be returned to [the] parents' home within the foreseeable future, if at all,' and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App at 64, quoting *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714, citing *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001), *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004), and *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009). Finally, "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," and relative placement should be an "explicit factor" in the best-interest determination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

Respondent first argues that the trial court clearly erred because its best interests determination was overly focused on respondent's conduct as opposed to JHT's welfare. Specifically, respondent contends that the trial court failed to consider the uniqueness and particularities of JHT. We disagree.

First, respondent's argument is legally without merit. Respondent relies upon a principle she derives from *Olive/Metts*, that in termination cases involving multiple children, "the trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App at 42, citing *Foskett v Foskett*, 247 Mich App 1, 11; 634 NW2d 363 (2001), and *In re HRC*, 286 Mich App at 457. Respondent extends the principal to this case—which only involved one child—by arguing that *Olive/Metts* requires in every case "a body of evidence addressing the uniqueness and particularities" of the child at issue. While we agree that the best-interest analysis is intended to be child-centric, respondent's reliance on *Olive/Metts* is misplaced.

In *Olive/Metts*, the respondent's parental rights to her five children were terminated, and this Court affirmed the termination as to three of the children and reversed the termination as to the other two. *In re Olive/Metts*, 297 Mich App at 37. With regard to the two terminations that were reversed, this Court determined that the trial court failed "to consider the best interests of each child individually," and failed to "explicitly address each child's placement with relatives at the time of the terminating hearing." *Id.* at 44. Neither circumstance applies to this case, where the trial court *only* had the interests of one child to consider, and spent a considerable amount of time addressing the issue of relative placement.

To the extent that respondent's argument is that the trial court placed too much weight on respondent's history of CPS involvement with respect to her two older children—BT and KA— the argument is still without merit. "The doctrine of anticipatory neglect recognizes that '[h]ow a parent treats one child is certainly probative of how that parent may treat other children.' " *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001), quoting *In re LaFlure*, 48 Mich App 377, 392; 210 NW2d 482 (1973) (alteration in original). See also *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009) (applying the concept of anticipatory neglect to the best-interest

analysis). Thus, contrary to her assertion, respondent's history of CPS involvement with respect to BT and KA was relevant to the determination of whether termination of respondent's parental rights would serve the best interests of JHT. Moreover, the trial court considered a great number of factors *in addition* to respondent's CPS history.

The trial court considered respondent's bond with JHT, noting that respondent had only cared for JHT for approximately seven months of his 2½ year life, and that "[a]ny bond that [JHT] had outside that seven months . . . ha[d] only been there through a series of somewhat sporadic visitations." In fact, JHT had lived in five separate placements since birth. The court found that JHT was "undoubtedly more bonded to his grandmother . . . than his own mother." The court further considered respondent's parenting ability, noting that due to her history, the factor did not weigh in favor of respondent. The court considered the advantages of JHT's placement over respondent's home, which at the time of the hearing was a court-ordered, in-patient rehabilitation program, finding that even if JHT's placement with his paternal grandmother ended up being temporary, finding a stable adoptive home would serve the minor's welfare better than being returned to respondent. The court considered the opinion of expert psychologists, one of whom reported in 2015—during JHT's first removal—that while reunification between JHT and respondent was the goal, if respondent did not show "notable progress" with respect to her substance abuse and parenting skills, and that the permanency plan should be reconsidered. In 2017—during the second removal—another psychologist determined that respondent had not gained insight, substantially altered her behavior, or otherwise made progress, and therefore termination of respondent's parental rights served JHT's best interests. Finally, the court considered JHT's need for permanency and stability, the likelihood that respondent would be capable of providing the same within the foreseeable future, and the likelihood that JHT could be adopted.

With the trial court having weighed all of the above factors, respondent's contention that the court failed to consider JHT's welfare in making its best-interest determination, or that the trial court gave undue weight to respondent's history with BT and KA, is without merit.

Respondent next argues, in the alternative, that she was "turning the corner on her drug abuse," and that Michigan caselaw does not support termination of parental rights where the parent's conduct is not "sufficiently egregious." Rather than cite to any cases directly supporting her argument, respondent relies upon a number of cases in which the termination of parental rights was affirmed on appeal, but the conduct of the parent at issue was distinguishable from the conduct of respondent. Respondent distinguishes those cases in order to argue that respondent's termination should be reversed. Indeed, as cited by respondent, both *Medina* and *Schadler* involved sexual abuse by the respondents; in *In re Brown/Kindle/Muhammad*, 305 Mich App 623; 853 NW2d 459 (2014), the children at issue had been physically abused; and in *Frey*, the child had been separated from the respondent for nearly two years. *In re Medina*, 317 Mich App at 222; *In re Schadler*, 315 Mich App at 408; *In re Brown/Kindle/Muhammad*, 305 Mich App at 636; *In re Frey*, 297 Mich App at 248. This case does not involve sexual abuse, physical abuse perpetrated against JHT, or 22 months of separation between respondent and JHT. None of the cited cases, however, support the contention that respondent's history of drug abuse and neglect could not independently warrant a finding that termination of respondent's rights was in the best interests of JHT. That is, respondent provides no caselaw in support of her contention that

termination of parental rights is an action limited to sexual abusers, physical abusers, or completely absent parents.

More importantly, respondent *admitted* that her behavior was "sufficiently egregious" to warrant termination when she pleaded no contest to the charges contained in the petition for termination and conceded that statutory grounds for termination existed pursuant to MCL 712A.19b(3)(g) (failure to provide proper care and custody and no reasonable expectation that parent will be able to provide proper care and custody within a reasonable time) and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to parent). Respondent provides no caselaw to suggest that, where a statutory basis for termination inarguably exists, the conduct that led to that statutory basis must be reexamined for "egregiousness" as part of the best-interest determination. Additionally—and ironically—in stark contrast to her first argument on appeal, respondent's second argument presumes that the most relevant factor in determining the best interests of JHT is the egregiousness of respondent's conduct, as opposed to any other factor more individually focused on JHT's welfare.

As respondent herself argues, the best-interest determination is intended to be a child-centered analysis. See *In re Medina*, 317 Mich App at 239, quoting *In re Trejo*, 462 Mich at 356 ("The 'primary beneficiary' of the best-interest analysis 'is intended to be the child.' "). See also *In re Schadler*, 315 Mich App at 411, citing *Moss*, 301 Mich App at 87 ("With respect to the trial court's best-interest determination, we place our focus on the child rather than the parent."). "Once the petitioner has presented clear and convincing evidence that persuades the court that at least one ground for termination is established . . . the liberty interest of the parent no longer includes the right to custody and control of the child[]," and whether termination is necessary depends on the best interests *of the child*. *In re Trejo*, 462 Mich at 355, citing *In re LaFlure*, 48 Mich App at 387.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens